UNITED STATES of America, Appellee,

v.

Tyrone PEREZ, also known as Larry, also known as Starky, Defendant–Appellant.

No. 375, Docket 97–1139.

United States Court of Appeals, Second Circuit.

Submitted Oct. 1, 1997.

Decided Nov. 7, 1997.

Zachary W. Carter, United States Attorney, Eastern District of New York (Peter A. Norling and Susan Corkery, Assistant United States Attorneys, of counsel), for Appellee United States of America.

Tyrone Perez, White Deer, PA, pro se.

* The Honorable Milton Pollack, of the United States District Court for the Southern District of

Before: VAN GRAAFEILAND and McLAUGHLIN, Circuit Judges, and POLLACK, District Judge.*

McLAUGHLIN, Circuit Judge.

## BACKGROUND

In June 1991, Tyrone Perez was arrested after he delivered two pistols and a quantity of cocaine base to undercover agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF"). During the previous two months, ATF agents had purchased eleven firearms and approximately seventeen grams of cocaine from Perez. After a detention hearing, Perez was released on bond and confined to his home, subject to electronic monitoring by an ankle bracelet.

In July 1991, Perez was indicted in the United States District Court for the Eastern District of New York (Johnson, J.) for distributing cocaine base, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and for dealing firearms, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D). Three weeks later, the government realized that Perez had severed his ankle bracelet and fled. After Perez missed his arraignment on July 23, 1991, the district court issued a bench warrant for his arrest. He surrendered voluntarily in August 1991, over one month after fleeing.

### A. Guilty Plea and Sentencing

In November 1991, Perez pled guilty to distributing cocaine base in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). In the plea agreement, the government agreed to dismiss the weapons charge and to refrain from "tak[ing] a position concerning where within the applicable guideline range the defendant's sentence should fall."

At the plea allocution, Perez admitted that he sold cocaine base to the ATF agents. Relying on a penalty sheet prepared by the government, the district court stated that, in light of Perez's acceptance of responsibility, "the worst that you can possibly do, assum-

New York, sitting by designation.

ing there is no upward departure, is anywhere from 51 to 63 months."

The Probation Department subsequently prepared a Presentence Report ("PSR") in which it calculated Perez's base offense level at 26, to which it added (1) a two-point enhancement under § 2D1.1(b)(1) of the Guidelines for possession of firearms as part of the offense; and (2) a two-point enhancement for obstruction of justice under § 3C1.1, because Perez severed his ankle bracelet and fled. The PSR set a criminal history category of III and recommended a final offense level of 30, yielding a Guidelines range of 121 to 151 months.

At the sentencing hearing in April 1992, Perez objected to the PSR's enhancement for obstruction of justice and argued that he should receive a two-point downward departure for acceptance of responsibility because he pled guilty. He also objected to the PSR's determination of his criminal history category as III, arguing that it should be only II because the report erroneously reflected a 1988 conviction for a violation, not a crime. Perez told the court that he had never sold drugs and guns until he

> came in contact with this woman who [he] didn't know, and she got me in contact with these agents and I mean she kept calling me. She was the one who approached me and asked me for it, and she gave me her number and she took my number and she kept calling me, and then I met in contact with the agents and in the first transactions went down it was—I was in the car with them and we was talking and I was telling them I don't know, I don't know if I really want to do this and I even told them no at one point and then they were persistent ... and then he just used psychology or whatever and then ... I sold two firearms to them....

The court then asked Perez if he wished to withdraw his guilty plea, and his attorney responded no.

The district court rejected Perez's argument that he deserved a downward departure, concluding that Perez's statement to the court demonstrated his failure to accept responsibility for his actions. The court, however, did not explicitly address Perez's

obstruction of justice argument. The court sentenced Perez to 130 months' imprisonment, four years of supervised release and a $50 special assessment. The difference between the Guideline conjecture at the plea allocution and the range actually calculated during the sentencing resulted from a criminal history category of III instead of II, a two-level enhancement for obstruction of justice, a two-level enhancement for possession of a weapon, and the denial of a two-point downward departure for acceptance of responsibility.

Perez appealed, arguing that the district court sentenced him pursuant to an incorrect Guidelines range and erroneously included the two-point enhancement for obstruction of justice. Upon that appeal, we remanded for resentencing, finding that the court improperly calculated Perez's criminal history, but otherwise we affirmed the court's sentencing determinations. *See United States v. Perez,* No. 92–1241, 983 F.2d 1047 (2d Cir. Nov.4, 1992).

## B. *Resentencing*

At resentencing in December 1992, the attorney for the government stated: "I would also like to point out, for whatever it's worth, that the 130 months which your Honor originally sentenced the defendant to still falls within the appropriate Guideline range of 108 months to 135 months."

At this juncture, Perez sought to withdraw his guilty plea, claiming that he entered the plea under duress and without understanding its terms, and that he had received ineffective assistance of counsel. The court denied his motion to withdraw the plea and rejected his claim of ineffective assistance of counsel, pointing out that his lawyer had successfully achieved a remand of the case for resentencing. Applying a criminal history category of II, the court resentenced Perez to 125 months' imprisonment, four years of supervised release and a $50 special assessment.

Represented by new counsel, Perez appealed again, arguing that the district court should have granted his motion to withdraw his plea because the court had indicated at the original plea allocution that, based on the

penalty sheet prepared by the government, he would be sentenced to no more than 63 months' imprisonment. We affirmed. *See United States v. Perez*, No. 93–1023, 996 F.2d 302 (2d Cir. May 25, 1993). We pointed out that the court had expressly asked Perez during his original sentencing if he wished to withdraw his plea, and, although it was crystal clear at that time that he faced a much greater sentence than originally estimated, he indicated through counsel that he still wished to plead guilty. *See id.* at 3.

### C. Section 2255 Motion

In October 1994, Perez filed in the district court a *pro se* motion for "Reconsideration of Sentence Imposed & Motion for Modification of Sentence Imposed." He argued that (1) the court should have granted a downward departure for acceptance of responsibility; (2) he was entitled to an extra one-level departure for acceptance of responsibility, as provided in a 1989 amendment to the Sentencing Guidelines in effect at his resentencing; (3) the court erred by finding that he obstructed justice; and (4) the court failed to make factual findings or expressly adopt the conclusions of the Probation Department at sentencing, in violation of Federal Rule of Criminal Procedure 32(c)(1). Perez alleged that the court had jurisdiction over the motion under both 28 U.S.C. § 2255 and 18 U.S.C. § 3582.

Two months later, in December, Perez filed a supplemental motion for reconsideration, adding the argument that he should have received a downward departure based on his voluntary return to custody after he had escaped from custody. In March 1995, he filed yet another motion, a "second supplemental motion for reconsideration," requesting an evidentiary hearing on his arguments.

In May 1995, in response to the government's filing of papers in opposition to his motion, Perez filed an "Amendment to Motion for Reconsideration." He claimed that (1) the government breached its promise in the plea agreement to refrain from taking a position regarding Perez's sentence; (2) the district court violated Federal Rule of Criminal Procedure 11(e)(2) by failing to inform Perez that he would be held to the plea agreement even if the court imposed a longer sentence than he expected to receive; and (3) the court accepted the plea agreement without reviewing the PSR. Perez also argued that he received ineffective assistance of counsel.

The district court noted that many of Perez's claims were procedurally barred and that the proper jurisdictional basis for his motion was 28 U.S.C. § 2255, not 18 U.S.C. § 3582. The court, nevertheless, addressed the merits of each of his claims, and denied all the motions. *See United States v. Perez*, No. 91 CR. 712(SJ), 1997 WL 27140 (E.D.N.Y. Jan. 22, 1997).

### D. The Instant Appeal

In March 1997, Perez appealed the district court's order denying all his motions. He limits his attack to the following contentions: (1) the court violated Rule 32(c)(1); (2) the government breached the plea agreement when it apprised the court at the resentencing hearing that the original sentence lay within the appropriate Guidelines range; (3) the court violated Rule 11(e)(2); (4) the court erred during resentencing by refusing to entertain his motion to withdraw his guilty plea; and (5) his first attorney was ineffective.

The government argues that the appeal should be dismissed because Perez has not obtained a "certificate of appealability" ("COA") under the recently enacted Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214.

### DISCUSSION

■ As a preliminary matter, we agree with the district court that, properly construed, Perez's claims are brought by way of a motion under 28 U.S.C. § 2255, not 18 U.S.C. § 3582.

Section 3582(c)(2) authorizes the modification of a sentence based on a sentencing range that has subsequently been reduced by the Sentencing Commission. *See* 28 U.S.C. § 3582(c)(2); *United States v. Argitakos*, 862 F.2d 423, 424 (2d Cir.1988). Perez argues

that he was entitled to a one-level departure for acceptance of responsibility pursuant to a 1992 amendment to U.S.S.G. § 3E1.1(a). This amendment·is not listed, however, in U.S.S.G. § 1B1.10(c), which governs the retroactivity of Guideline amendments and specifies which amendments a defendant may invoke pursuant to § 3582(c)(2). *See* U.S.S.G. § 1B1.10(a). Accordingly, § 3582 is inapplicable.

Under § 2255, in contrast, a defendant may challenge his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. All of Perez's remaining claims collaterally attack his sentence and are cognizable, if at all, under § 2255.

Perez's appeal therefore requires us to consider whether he must obtain a COA from the district court as a pre-condition to appealing that court's denial of his § 2255 motion.

## A. *Certificate of Appealability*

■ Before the AEDPA, a defendant was not required to make any threshold showing to appeal the denial of his § 2255 motion. *See Lozada v. United States,* 107 F.3d 1011, 1013 n. 1 (2d Cir.1997). Section 102 of the AEDPA, however, amended 28 U.S.C. § 2253 to add the following:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

Section 102 is silent on how it applies, if at all, to defendants whose motions were filed before April 24, 1996, the effective date of the AEDPA.

In March 1997, we concluded that section 102 applies to § 2255 motions where the appellant filed his notice of appeal after April 24, 1996, even though he filed his underlying motion before that date. *See Lozada,* 107 F.3d at 1014.

Two months later, however, the Supreme Court held that 28 U.S.C. § 2254(d), a provision enacted under the AEDPA setting forth standards for reviewing a state court conviction, does not apply to § 2254 petitions filed before the effective date of the AEDPA. *See Lindh v. Murphy,* —— U.S. ——, —— ——, 117 S.Ct. 2059, 2062–68, 138 L.Ed.2d 481 (1997);· *see also Nelson v. Walker,* 121 F.3d 828, 831–32 (2d Cir.1997). *Lindh*—although it deals with habeas petitions to review state convictions—provides a template for deciding retroactivity questions that arise in connection with newly enacted procedural statutes. A court must ask whether well-established rules of statutory construction suggest that a new provision applies to a particular case. *See id.* at —— –– ——, 117 S.Ct. at 2062–64. If the customary rules of statutory construction suggest that a new provision does not apply, the new provision is inapplicable. *See id.*

The Court in *Lindh* applied the normal rules of statutory interpretation to determine that § 2254(d) of the AEDPA did not apply to the petitioner's state conviction. *See id.* at —— –– ——, 117 S.Ct. at 2063–68. The Court noted that sections 101–106 of the AEDPA amend sections 2244 and 2253–2255 of chapter 153 of Title 28 of the United States Code, governing *all* habeas corpus proceedings in federal courts. *See id.* at —— –– ——, 117 S.Ct. at 2063–64. The Court further pointed out that section 107 of the AEDPA creates chapter 154, which enacts rules governing collateral challenges to state capital proceedings that apply only when states meet certain conditions. *See id.* Finally, and most signif-

icantly, the Court pointed out that although sections 101–106 are silent on how the amendments therein apply to defendants whose petitions were filed before April 24, 1996, section 107(c) of the AEDPA explicitly provides that " '[c]hapter 154 ... shall apply to cases pending on or after the date of enactment of this Act.' " *Id.* at ——, 117 S.Ct. at 2063 (quoting 110 Stat. 1226).

Deducing that Congress was obviously aware of the retroactivity problems, as evident in the explicit language of section 107(c), the Court concluded "that the amendments to chapter 153 were assumed and meant to apply to the general run of habeas cases only when those cases had been filed after the date of the Act." *Id.* at ——, 117 S.Ct. at 2063. That is, section 107(c) creates a "negative implication." *Id.* at ——, 117 S.Ct. at 2068. The only exceptions to this general rule were those situations "where chapter 154 otherwise makes select provisions of chapter 153 applicable to pending cases." *Id.* at ——, 117 S.Ct. at 2063. Because *Lindh* did not implicate an exception to the general rule, the new § 2254(d) was held inapplicable. *See id.* at —— – ——, 117 S.Ct. at 2067–68.

The most reasonable conclusion to be drawn from *Lindh* is that an appellant need not obtain a COA to appeal the denial of his § 2255 motion so long as he filed the motion before April 24, 1996. The Court's language in *Lindh* is sweeping and explicit: "the negative implication of § 107(c) is that the new provisions of chapter 153 generally apply only to cases filed after [the AEDPA] became effective." —— U.S. at ——, 117 S.Ct. at 2068. There is no apparent reason why the Court would employ a different analysis for § 2254 than § 2255, because both are in chapter 153.

Moreover, in explaining that it granted certiorari in light of the split between the circuits over whether the new § 2254(d) provisions should apply to pending cases, the Court cited not only cases involving § 2254(d), but also *Hunter v. United States,* 101 F.3d 1565 (11th Cir.1996) (in banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 1695, 137 L.Ed.2d 822 (1997), which addressed the precise question before us. *See* —— U.S. at ——, 117 S.Ct. at 2062. The Court's refer-

ence to *Hunter* strongly indicates that it intended to address the retroactivity of all of the new chapter 153 provisions enacted by the AEDPA. *See, e.g., Williams v. Cain,* 117 F.3d 863, 864–65 (5th Cir.1997).

Finally, it should be noted that every circuit court that has addressed this question has concluded that, under the *Lindh* analysis, a defendant who filed his § 2255 motion before the effective date of the AEDPA need not obtain a COA to appeal the denial of his motion after the effective date. *See In re Hanserd,* 123 F.3d 922, 933 (6th Cir.1997); *Young v. United States,* 124 F.3d 794, 795 (7th Cir.1997); *Arredondo v. United States,* 120 F.3d 639, 640 (6th Cir.1997); *United States v. Sanchez,* No. 96–2153, 1997 WL 452247, at *2 & n. 2 (10th Cir. Aug. 8, 1997); *United States v. Russell,* No. 96–7106, 1997 WL 423121, at *1 & n. 1 (10th Cir. July 29, 1997). It is also not without significance that we have been interpreting *Lindh* in this fashion in deciding motions. *See Ruotolo v. United States,* No. 96–2938 (2d Cir. July 2, 1997); *Perez v. United States,* No. 97–2145 (2d Cir. July 7, 1997); *Quiles v. United States,* No. 96–2651 (2d Cir. July 7, 1997); *see also Berrios v. United States,* 126 F.3d 430, 433 (2d Cir.1997).

The COA requirement for § 2255 appeals does not apply, because the underlying motion was filed before April 24, 1996, the effective date of the AEDPA. To the extent that our decision in *Lozada v. United States,* 107 F.3d 1011 (2d Cir.1997), is inconsistent with this conclusion, it will no longer be followed.

### B. *Perez's Claims on Appeal*

■ A § 2255 motion may not relitigate issues that were raised and considered on direct appeal. *See Riascos–Prado v. United States,* 66 F.3d 30, 33 (2d Cir.1995). Perez has already argued on appeal from his resentencing that the district court should have granted his motion to withdraw his guilty plea, and he rehashes the same arguments here. *Cf. id.* at 33–34. Accordingly, we decline to address the merits of this claim.

■ A defendant is also barred from raising claims in his § 2255 motion that he failed to raise on direct appeal unless he shows cause for the omission and prejudice resulting therefrom. *See Femia v. United*

*States,* 47 F.3d 519, 524 (2d Cir.1995). A defendant may raise such claims " 'where the issues were not raised at all on direct appeal due to ineffective assistance of counsel.' " *Underwood v. United States,* 15 F.3d 16, 18 (2d Cir.1993) (quoting *Barton v. United States,* 791 F.2d 265, 267 (2d Cir.1986)).

■ Perez failed to argue on appeal from his original sentencing that the district court violated Rules 32(c)(1) and 11(e)(2). He appears to argue, however, that these omissions were due to the ineffective assistance of counsel.

To show that counsel was ineffective, Perez must show that the attorney's performance fell below an objective standard of reasonableness and that the outcome of his case would have been different had the attorney performed adequately. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Here, Perez must show that but for his attorney's errors, he would have pled not guilty. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *United States v. Coffin,* 76 F.3d 494, 498 (2d Cir. 1996).

We agree with the district court that Perez simply cannot show that, but for the alleged errors his attorney made, he would have pled not guilty. *See United States v. Perez,* No. 91 CR. 712 (SJ), 1997 WL 27140, at *4 (E.D.N.Y. Jan. 22, 1997). At his sentencing, Perez was given the opportunity to withdraw his plea. He chose not to do so, however, although he was fully informed and aware of his likely sentence. *See United States v. Perez,* No. 93–1023, 1993 WL 216302, at *3 (2d Cir. May 25, 1993).

Finally, Perez failed to argue on appeal from his resentencing that the government breached the plea agreement, and he offers no explanation for this omission. *Cf. Cabrera,* 972 F.2d at 25.

## CONCLUSION

For all of the foregoing reasons, the district court's order dismissing Perez's claims is affirmed.