William LAMORTE, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 97 Civ. 2881(DNE).

United States District Court, S.D. New York.

Oct. 8, 1999.

Robert M. Simels, Robert M. Simels P.C., New York City, for Plaintiff.

## OPINION & ORDER

EDELSTEIN, District Judge.

Petitioner William LaMorte ("Petitioner" or "LaMorte") brought this present motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (" § 2255 motion" or "habeas petition") on April 22, 1997.

In the instant habeas petition, LaMorte alleges (1) that at trial, he was denied effective assistance of counsel and (2) that the Court erroneously convicted him under both 21 U.S.C. § 846 and 21 U.S.C. § 848. Having reviewed Petitioner's claims, this Court denies Petitioner's habeas petition with respect to the first claim, which the Court finds to be without merit. With regard to Petitioner's second claim, this Court dismisses the § 846 count against LaMorte, leaving intact the § 848 conviction and the sentence imposed thereto. This Court further declines to issue Petitioner a certificate of appealability.

On August 29, 1999, Petitioner brought a second § 2255 motion. Because Petitioner has filed a successive § 2255 petition, this Court transfers the claim to the United States Court of Appeals for the Second Circuit for certification, pursuant to 28 U.S.C. § 2244 and § 2255.

### Background

Following a jury trial, Petitioner was convicted of one count of conspiring to import marijuana, in violation of 21 U.S.C. § 846, and one count of engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a). The evidence that the Government introduced at trial demonstrated that Petitioner had organized the importation of nearly 120 tons of marijuana from foreign countries into the United States between 1970 and 1986. Several members of Petitioner's drug operation testified for the Government against Petitioner at trial. *See United States v. LaMorte*, 940 F.Supp. 572, 574 (S.D.N.Y. 1996).

On March 18, 1991, this Court sentenced Petitioner to fifty years imprisonment without parole and fined Petitioner $49,200,000. In a subsequent forfeiture proceeding, this Court ordered him to surrender an additional $25,000,000 in cash and property. *See id.* The Court of Appeals for the Second Circuit affirmed LaMorte's conviction and sentence on November 19, 1991. *United States v. LaMorte*, 950 F.2d 80 (2d Cir.1991), *cert. denied*, 504 U.S. 909, 112 S.Ct. 1938, 118 L.Ed.2d 544 (1992). Pursuant to Federal Rule of Criminal Procedure 35(b), Petitioner filed a motion for reduction of sentence, and later filed a motion seeking the recusal of this Court from the case. By opinion and order entered September 12, 1996, this Court denied both of Petitioner's motions, *see LaMorte*, 940 F.Supp. at 574, and the Second Circuit affirmed the judgment on April 29, 1997. *See United States v. Lamorte*, 112 F.3d 506 (2d Cir.1997).

### Discussion

This Court now considers Petitioner's § 2255 motions, of April 22, 1997 and August 29, 1999, respectively.

A. The Motion of April 22, 1999 [1]

■ Petitioner raises two grounds for his motion: (1) that at trial, he was denied effective assistance of counsel and (2) that the Court erroneously convicted him under both 21 U.S.C. § 846 and 21 U.S.C. § 848. This Court now applies the legal standard applicable to each allegation.

1. Allegations of Ineffective Assistance of Counsel

The sixth amendment to the Constitution guarantees criminal defendants the

---

**1.** This Court notes that although Petitioner filed this motion nearly eight years after his conviction became final and nearly one year after the effective date of the Antiterrorism and Death Penalty Act of 1996 ("AEDPA"), which imposed a one-year limitations period on such filings, *see* 28 U.S.C. § 2255, Petitioner's motion is not time-barred. *See Mickens v. United States*, 148 F.3d 145, 148 (2d Cir. 1998) (holding that AEDPA does not bar § 2255 motion filed within one year after effective date of the Act).

right to counsel. As the Supreme Court has noted, "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'q denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). The right to counsel protects a defendant's right to a fair trial because "access to counsel's skill and knowledge is necessary to accord defendants ... 'ample opportunity to meet the case of the prosecution.'" *Id.* at 685, 104 S.Ct. 2052 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). Because counsel plays such a crucial role, the Supreme Court has recognized that " 'the right to counsel is the right to the effective assistance of counsel.'" *Id.* at 686, 104 S.Ct. 2052 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Thus, failure to render adequate legal assistance is a violation of the defendant's sixth amendment rights. *See id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

■ The Supreme Court has established a two-part test for determining whether an attorney's representation constitutes ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687, 104 S.Ct. 2052. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

■ To satisfy the first prong of the *Strickland* test, a defendant must show that "his attorney's performance 'fell below an objective standard of reasonableness.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994) (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). The Supreme Court has eschewed articulating a rigid set of standards for determining whether an attorney's conduct is reasonable, stating instead that "[t]he proper measure of at-

torney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.

■ The Supreme Court has, however, explained the method that a federal court should employ in determining whether an attorney's performance was reasonable. The Court has instructed that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). This presumption is necessary because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689, 104 S.Ct. 2052 (citation omitted). Further, a court may not use hindsight in evaluating whether an attorney's conduct was reasonable. *See id.*

■ With the standard for ineffective assistance of counsel in clear view, each of petitioner's claims is examined in turn. Petitioner first alleges that counsel "refused to investigate the allegations in the indictment or to interview witnesses [Petitioner] identified to [counsel] who would support [the] defense." Petitioner's Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Petitioner's Mot.") at ¶ 12(A). In his memorandum supporting the motion, however, Petitioner identifies only one witness, Rocky Perroni ("Perroni"), who, according to Petitioner, "had been specifically informed by [P]etitioner that he no longer was a part of the conspiracy ... and had pulled out all of his investments." Petitioner's Mem. of Law in Supp. of Mot. Pursuant to 28 U.S.C. § 2255 ("Petitioner's Mem.") at 20.

Petitioner's claim is meritless. "Counsel's decision to interview witnesses is a strategic decision." *Byas v. Keane*, No. 97 Civ. 2789, 1999 WL 608787, at *6 (S.D.N.Y. August 12, 1999); *accord Demosthene v. Miller*, No. 97 Civ. 495, 1998 WL 338087, at *3 (S.D.N.Y. June 24, 1998) ("Whether the attorney is alleged to have failed to interview a witness or failed to call a witness, the *Strickland* analysis is the same."). It is well settled that, "given the strong presumption in favor of counsel providing reasonable professional assistance, such strategic decisions may not be second-guessed." *Byas*, 1999 WL 608787, at *6 (citation omitted); *accord Strickland*, 466 U.S. at 689–91, 104 S.Ct. 2052. Counsel's decision not to interview Perroni was not unreasonable. At the time of the trial, Perroni was an inmate in a New York State prison. *See* Petitioner's Mem. at 20. Therefore, counsel may reasonably have believed that Perroni's credibility would have been questionable, and that highlighting any association between Perroni and Petitioner might have reflected unfavorably upon Petitioner.

■ Moreover, Petitioner's claim clearly fails to meet the prejudice prong of the *Strickland* test, which requires a finding of a reasonable probability that, but for counsel's allegedly unprofessional errors, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Wise v. Smith*, 735 F.2d 735, 739 (2d Cir.1984). Petitioner offers no concrete evidence to suggest that Perroni would have provided exculpatory evidence. *See Byas*, 1999 WL 608787, at *6. Instead, Petitioner baldly asserts that Perroni's testimony would have established Petitioner's withdrawal from the conspiracy. Even assuming that Petitioner's description of Perroni's potential testimony is accurate, considering the overwhelming evidence introduced at trial proving Petitioner's guilt beyond a reasonable doubt. The evidence included the testimony of several members of Petitioner's drug oper-

ation, *see LaMorte*, 940 F.Supp. at 574, counsel's decision not to interview or call Perroni could not have prejudiced Petitioner. *See Matura v. United States*, 875 F.Supp. 235, 239 (S.D.N.Y.1995) (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *United States v. Reiter*, 897 F.2d 639, 645 (2d Cir.), *cert. denied* 498 U.S. 817, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990)).

■ Petitioner further alleges that counsel "refused to allow [him] to testify in [his] defense or to inform [him] that [he] had a choice to testify in [his] own defense." Petitioner's Mot. at ¶ 12(A). The first of these two allegations, that Petitioner was denied the effective assistance of counsel because counsel decided that he should not testify in his own behalf, again "relates to decisions that 'fall squarely within the ambit of trial strategy, and, if reasonably made' cannot support an ineffective assistance claim." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir.1992) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987)). It was a reasonable tactical decision to rely exclusively on attacking the Government's witnesses and presenting independent testimony rather than to subject Petitioner to all of the risks attendant cross-examination. *See id.* Again, in view of the substantial evidence the Government presented against Petitioner at trial, there is no showing of prejudice resulting from counsel's decision that Petitioner not testify in his own behalf.

The second allegation, suggesting that Petitioner was unaware of his right to testify in his own defense at trial, is belied by an affidavit of co-counsel that Petitioner himself provides in support of his petition. The affidavit states that "[t]he [P]etitioner was adamant in advising me that he wanted to testify in his own defense. A decision was not made until late in the trial, and then I told the [P]etitioner that I did not want him to testify." Affirmation of Mark Summers in Support of a Petition for a Writ of Habeas Corpus, at ¶ 8.[2]

---

**2.** In a memorandum of law submitted to this    Court on October 5, 1998, Petitioner refers to

**2. Allegations Regarding the Convictions under § 846 and § 848**

■ Petitioner argues that, pursuant to the Supreme Court's decision in *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), "[c]onvictions under both § 846 and § 848 cannot stand and, in the interest of justice, Petitioner should be resentenced on the conspiracy count alone." Petitioner's Mem. at 25. In *Rutledge,* the Supreme Court rejected the practice that the Second Circuit had previously adopted, instructing that when a defendant has been convicted under both § 846 and § 848, a district court should " 'combine' the 'conviction[ ] on the lesser offense[ ] . . . with the conviction on the greater offense, leaving the defendant convicted of two offenses but punished for only one.' " *United States v. Miller,* 116 F.3d 641, 678 (2d Cir.1997) (citation omitted) (alteration in original). Instead, the Court held in *Rutledge* that one of the convictions must be dismissed. *See id.* (citing Rutledge, 517 U.S. at 306–07, 116 S.Ct. 1241). Thus, this Court dismisses the § 846 conspiracy count against LaMorte, leaving intact the underlying § 848 count of engaging in a continuing criminal enterprise and the sentence imposed on this, the greater offense. *See Underwood v. United States,* 166 F.3d 84, 86 (2d Cir. 1999) (citations omitted); *Miller,* 116 F.3d at 678.

Petitioner apparently suggests that dismissing the § 846 count, leaving a conviction on only the § 848 count, would necessitate a reduction in sentence. *See* Petitioner's Mem. at 26. No such resentencing is necessary. In conformance with the Second Circuit rule that governed prior to *Rutledge,* while this Court convicted Petitioner on both the § 846 and the § 848 counts, this Court "punished [Petitioner] for only one," the § 848 conviction. *Miller,* 116 F.3d at 678.

**B. The Motion of August 29, 1999**

Petitioner's motion brought on August 29, 1999 presents this Court with a second § 2255 motion, which must be certified by the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. §§ 2244, 2255. This Court therefore transfers this matter to the Second Circuit in the interest of justice. *See* 28 U.S.C. § 1631; *Liriano v. United States,* 95 F.3d 119 (2d Cir.1996) (per curiam).

**C. Certificate of Appealability**

A petitioner may not appeal a denied habeas petition to the Court of Appeals unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). A court will issue a certificate "only if the applicant has made a showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see generally United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997) (discussing the standard for issuing a certificate of appealabili-

an alleged recantation by one of the witnesses who testified against Petitioner, Thomas La-Morte, Petitioner's brother. *See* Petitioner's Mem. of Law in Reply to Government's Mem. in Opp'n to Mot. Pursuant to 28 U.S.C. § 2255 at 5. This Court received a signed letter purportedly sent by Petitioner's brother, stating that "I know for a fact that my brother was not involved in any smuggling activity during 1983 or after because we traveled in the same circles and I would have been aware of such activities." The letter also refers to "[d]uplicity" on the part of the Government in handling this case.

This Court is reluctant to consider any allegations made in this letter, which consists of unsworn statements lacking any indicia of reliability. Moreover, Petitioner's Reply

Memorandum was submitted well after April 24, 1997, the first anniversary of AEDPA, and, therefore, is time-barred. *See* 28 U.S.C. § 2255. *Mickens,* 148 F.3d at 148. In addition, to the extent that Petitioner's Reply Memorandum presents a new allegation, Petitioner would have to offer this allegation in the form of a second or successive motion, which would require certification by the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2255. In any event, even if this Court considers the letter, it fails to meet the standard that the Second Circuit articulated, requiring "a credible recantation of the testimony in question [that] would most likely change the outcome of the trial." *Sanders v. Sullivan,* 900 F.2d 601, 602 (2d Cir.1990) (citation omitted).

ty), *cert. denied,* —— U.S. ——, 119 S.Ct. 384, 142 L.Ed.2d 318 (1998).

This Court finds that Petitioner will not be able to sustain this burden. In this Court's view, reasonable jurists could not disagree with the resolution of Petitioner's motion to vacate, set aside, or correct his sentence. Thus, this Court declines to issue a certificate of appealability. Further, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

## Conclusion

For the reasons discussed above, this Court dismisses Petitioner's ineffective assistance of counsel claim and Denies Petitioner a certificate of appealability. This Court also dismisses the § 846 count against Petitioner, leaving intact the § 848 conviction and the sentence imposed thereto. This Court also transfers Petitioner's second petition to the Court of Appeals for certification. In addition, this Court Denies Petitioner a certificate of appealability.

SO ORDERED.