UNITED STATES of America,
Plaintiff,

v.

Elizabeth CRUZ, Defendant.

No. 02–CR–0725 (CPS).

United States District Court,
E.D. New York.

Feb. 27, 2008.

Lara Treinis, U.S. Attorneys Office, Criminal Division, Brooklyn, NY, for Plaintiff.

Mitchell Golub, Esq., Attorney at Law, New York, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

SIFTON, Senior District Judge.

Elizabeth Cruz ("Cruz" or "defendant") pleaded guilty on July 19, 2002 to conspiring to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A)(iii). On May 20, 2003, this Court sentenced defendant to a 78–month term of incarceration and a 3–year term of supervised release.[1] Defendant is currently scheduled for release on September 23, 2008. Now before this Court is defendant's motion for modification of her sentence, pursuant to 18 U.S.C. § 3582(2)(c). For the reasons set forth below, defendant's motion is denied.

---

1. Under 21 U.S.C. § 841(b)(1)(A)(iii), the statutory range for defendant's sentence was 10 years to life. Defendant was sentenced to a term less than the statutory minimum for reasons noted below.

## Background

Defendant was charged with participation in a powder and crack cocaine distribution conspiracy headed by Francisco Aponte, defendant's common-law husband. Aponte and defendant have two children. As described in the Presentence Investigation Report ("PSR"), the factual findings of which the Court adopted, Aponte ran the operation. In exchange for supporting her and her two children, Aponte asked defendant to assist him by counting money, and weighing and packaging drugs.

Defendant pleaded guilty on July 19, 2002 pursuant to a plea agreement. At defendant's May 20, 2003 sentencing, the government declined to file a motion pursuant to Section 5K1.1 of the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") since the defendant had been arrested on new, drug related charges. The Court, adopting the PSR's findings, found defendant accountable for 1,756.07 grams of crack-cocaine and for 758.821 grams of powder cocaine. Converting these amounts to marijuana, pursuant to U.S.S.G. § 2D1.1, the Court found defendant accountable for the equivalent of 35,273.164 net kilograms of marijuana. Accordingly, the base offense level for defendant's conduct was set at a level of 38.

The Court further determined that a three-level reduction for acceptance of responsibility was not warranted, due to the defendant's subsequent arrest. May 20, 2003 Sentencing Transcript, at 14 (herein-

after "Tr. at ___"). The Court also agreed with the PSR's conclusion that defendant was not entitled to a minor role reduction. *Id.* However, the Court found that defendant was entitled to application of U.S.S.G. § 2D1.1(6) (2003), the so-called 'safety valve.' *Id.* The Court then stated that the appropriate offense level appeared to be 30, which, with the safety valve reduction, resulted in a total offense level of 28. Tr. at 15. After asking both sides if the guidelines calculation were correct and receiving no objection, based on an adjusted offense level of 28 and a Criminal History Category ("CHC") of I, I sentenced defendant to a 78–month term of incarceration, at the bottom of what I took to be the applicable guideline range.[2]

On November 1, 2007, Amendment 706, as further amended by Amendment 711, to U.S.S.G. § 2D1.1, Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy, took effect.[3] Amendment 706 generally reduces by two levels the base offense levels applicable to cocaine base ("crack") offenses. On December 11, 2007, the United States Sentencing Commission (the "Sentencing Commission") voted to apply the amendment retroactively to crack offenses, effective March 3, 2008. The Sentencing Commission also promulgated amendments to Policy Statement § 1B1.10, Reduction in Term of Imprisonment as a Result of Amended Guidelines Range, which will implement the retroactive application of Amendment 706, as

---

**2.** It is clear that the starting offense level should have been 38, rather than 30, since the cap of 30 was not appropriate due to my determination that a minor role adjustment was not warranted. U.S.S.G. § 2D1.1(a)(3) (2003). However, the government neither objected to nor appealed this error. In all events, the error, for the reasons set forth below, does not impact the analysis in this decision.

**3.** These amendments were issued pursuant to 28 U.S.C. § 994(*o*), which provides, in relevant part:

> The Commission periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section.

amended by Amendment 711, effective March 3, 2008 ("Policy Statement").

On January 9, 2008, defendant moved, through her counsel, for the modification of her sentence based on these amendments.

## Discussion

"A district court may not generally modify a term of imprisonment once it has been imposed." *Cortorreal v. United States*, 486 F.3d 742, 744 (2d Cir.2007). Pursuant to 18 U.S.C. § 3582(c)(2), however, the Court may modify the sentence of a defendant whose term of imprisonment was based on a sentencing range that has since been lowered by the Sentencing Commission.[4] A district court may, however, reduce a term of imprisonment only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also* 28 U.S.C. § 994(u) (if the Sentencing Commission reduces the term of imprisonment recommended for a particular offense or category of offenses, it "shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced").

■ U.S.S.G. § 1B1.10, p.s. (effective March 3, 2008), the applicable policy statement in this case, provides for several limitations or exclusions on the reduction of a term of imprisonment following an amendment to the Sentencing Guidelines. One exclusion provides that a "reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—. . . an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2) (B), p.s. (effective March 3, 2008).

Where a reduction is authorized, the Policy Statement states that a district court "shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range . . ." U.S.S.G. § 1B1.10(b)(2)(A), p.s. (effective March 3, 2008).

Defendant concedes that reducing her base offense level pursuant to the amended Sentencing Guidelines would not reduce her recommended guideline range.[5] A reduction in defendant's term of imprisonment is not authorized under § 3582(c)(2) and the Policy Statement because 1) the amendment does not have the effect of lowering her guideline range and 2) her current sentence is the minimum of the amended Sentencing Guideline range. *See* U.S.S.G. § 1B1.10(a)(2)(B) and (b)(2)(A).

---

**4.** 18 U.S.C. § 3582(c)(2) provides:

Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

**5.** Since no minor role adjustment was warranted, defendant's offense level calculation under the amended Sentencing Guidelines would result in an adjusted offense level of 34, based on a offense level of 36 and two-level reduction for the 'safety valve.' Even if defendant were entitled to the cap mistakenly applied at her sentencing, the resulting adjusted offense level under the amended Sentencing Guidelines would remain 28, the same as her original adjusted offense level.

Defendant argues, however, that *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and subsequent Supreme Court cases render not only the Sentencing Guidelines advisory, but also the policy statements issued pursuant to 18 U.S.C. § 3582(c)(2). According to defendant, the change in the crack guidelines is the predicate necessary to place defendant again before the court for a re-sentencing *ab initio* and the limitations and exclusions set forth in the Policy Statement are no more mandatory than any other provision of the Sentencing Guidelines post-*Booker.*

Accordingly, the defendant argues that it would be reasonable for the court to find the new powder versus crack cocaine sentencing disparity still results in a sentence greater than necessary to fulfill the requirements of 18 U.S.C. § 3553. If the court could treat powder and crack cocaine as equivalents, defendant argues, she would be accountable for 2.5 kilograms of cocaine and her base offense level would be 28. Applying the two-level 'safety valve' reduction, defendant's adjusted offense level would be 26. Were the Court to sentence defendant at the low end of the sentencing range for this lower offense level, 63 months, defendant would be entitled to release on March 3, 2008.

## I. *Booker Does Not Apply to § 3582(c)(2) Proceedings*

In *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that any fact, other than the fact of prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." As the Court noted, "When a judge's finding based on a mere preponderance of the evidence authorizes an increase in the maximum punishment, it is appropriately characterized as 'a tail which wags the dog of the sub-

stantive offense.'" *Id.* at 495, 120 S.Ct. 2348 (citing *McMillan,* 477 U.S. at 88, 106 S.Ct. 2411).

The Court noted:

> If facts found by a jury support a guilty verdict of murder, the judge is authorized by that jury verdict to sentence the defendant to the maximum sentence provided by the murder statute. If the defendant can escape the statutory maximum by showing, for example, that he is a war veteran, then a judge that finds the fact of veteran status is neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone. Core concerns animating the jury and burden-of-proof requirements are thus absent from such a scheme.

*Id.*

In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court held that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (emphasis in original).

Following *Blakely,* in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court "reaffirm[ed its] holding in *Apprendi*" and found the Guidelines violated the Sixth Amendment. *Booker,* 543 U.S. at 244, 125 S.Ct. 738. Accordingly, the Supreme Court excised the provision of the federal sentencing statute that made the Sentencing Guidelines mandatory, 18 U.S.C. § 3553(b)(1), making the "Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges but it permits the court to tailor the sentence in

light of other statutory concerns as well." *Id.* at 245, 125 S.Ct. 738 (internal citations omitted). The Court rejected the government's argument that the Guidelines might remain mandatory in some cases but not in others. *Id.* at 266, 125 S.Ct. 738.

Most recently, the Supreme Court held in *Kimbrough v. United States,* —— U.S. ——, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), that a sentencing court may, in fashioning a sentence that advances the § 3553(a) sentencing goals, take into account its view that the penalties for distributing crack are excessive in relation to those for other, similar drugs. One the same day, the Court, in *Gall v. United States,* —— U.S. ——, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), reiterated that the standard for appellate review of sentences is abuse of discretion and upheld a sentence of probation for defendant's participation in a conspiracy to distribute the drug commonly known as ecstasy, though the relevant guidelines called for a term of imprisonment ranging from 30–37 months.

■ The issue is how *Booker* and the other cases discussed above apply to a proceeding pursuant to § 3582(c)(2). 18 U.S.C. § 3582(c)'s requirements are jurisdictional. *See United States v. Smith,* 438 F.3d 796, 799 (7th Cir.2006) (§ 3582(c) limits the substantive authority of the district court and is accordingly a real "jurisdictional" rule); *see also United States v. Thomas,* 135 F.3d 873, 876 (2d Cir.1998) ("Congress has imposed stringent limitations on the authority of courts to modify sentences, and courts must abide by those strict confines"); *United States v. Silva,* 337 F.Supp.2d 573, 575–76 (S.D.N.Y.2004) (describing § 3582(c) as jurisdictional and declining to reduce defendants' sentences

due to lack of jurisdiction); *United States v. Gagot,* 534 F.Supp.2d 212, 213 (D.Mass. 2008) (discussing 18 U.S.C. § 3582(c)(2) and noting Congress can circumscribe district court's jurisdiction "as it sees fit").

Section 3582(c) (2)'s directive is that any reduction be consistent with applicable policy statements issued by the Sentencing Commission, as "Congress has granted the [Sentencing] Commission the unusual explicit power to decide whether and to what extent its amendments reducing sentences will be given retroactive effect." *Braxton v. United States,* 500 U.S. 344, 348, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991) (citing 28 U.S.C. § 994(u)).

Since section 3582(c)(2)'s requirement that a district court consider whether its reduction is consistent with the Sentencing Commission's Policy Statement is a limitation on a district court's jurisdiction, the Supreme Court's recent Sixth Amendment sentencing jurisprudence, including *Booker,* is not applicable and the district court remains limited by the Policy Statement. *See United States v. Wise,* 515 F.3d 207 (3d Cir.2008) ("Nothing in [*Booker*] purported to obviate the congressional directive on whether a sentence could be reduced based on subsequent changes in the Guidelines. As we have stated before, '[t]he language of the applicable sections could not be clearer: the statute directs the Court to the policy statement, and the policy statement provides that an amendment not listed in subsection (c) may not be applied retroactively pursuant to 18 U.S.C. § 3582(c) (2)' "); *see also Gagot,* at 213 n. 1.[6]

In *United States v. Hudson,* 242 Fed. Appx. 16 (4th Cir.2007), the Fourth Circuit determined that it is not clear error or

---

**6.** The *Gagot* decision also notes that the argument that the Policy Statement is advisory, taken to its logical extreme, would allow district courts to determine individually which Sentencing Guidelines amendments to

apply retroactively, rather than turning to Sections 1B1.10(a) and (c) of the Sentencing Guidelines Manual to determine whether the Sentencing Commission has stated that a particular amendment is designated to have

abuse of discretion to refuse to apply *Booker* to sentence reduction under 18 U.S.C. § 3582(c)(2). In *United States v. Swint*, 2007 WL 2745767, at *2 n. 1 (3d Cir. Sept. 21, 2007), the Third Circuit wrote, "the scope of a sentencing court's inquiry under section 3582(c)(2) is limited to consideration of a retroactive amendment to the Sentencing Guidelines; section 3582(c)(2) does not entitle a defendant to a full de novo resentencing." *But see United States v. Hicks*, 472 F.3d 1167 (9th Cir.2007) (*Booker* applies when a district court modifies a defendant's sentence pursuant to § 3582(c) (2)).[7]

II. *Sixth Amendment Concerns Are Not Implicated Under A § 3582(c)(2) Proceeding*

Due to the posture of the case, when a defendant makes a motion for modification of sentence under § 3582(c)(2), the Sixth Amendment concerns underlying the Supreme Court's recent sentencing opinions are not implicated.

A defendant in a § 3582(c)(2) proceeding has a presumptive, lawful sentence. In this case, that sentence is 78 months. Under § 3582(c)(2), there is no possibility of an increase in defendant's sentence above her current one. Any fact finding done by the judge, in conjunction with the § 3553(a) factors or otherwise, leads to a conclusion that the sentence either should or should not be reduced, *see United States v. Vautier*, 144 F.3d 756, 760 (11th Cir.1998) (sentencing court's power to reduce a sentence under § 3582(c)(2) is discretionary) and *Rivera v. United States*, 2003 WL 76988, at *3 (S.D.N.Y. Jan. 9, 2003) (Section 3582(c)(2) permits, but does

---

retroactive effect. 534 F.Supp.2d at 213 n. 1. *Gagot* continues that this cannot be the case because of the power granted to the Sentencing Commission to make this determination pursuant to 28 U.S.C. § 994(u).

**7.** In *Hicks*, the defendant had been convicted of conspiring to distribute crack cocaine, maintaining a place for drug trafficking, in violation of 21 U.S.C. §§ 841, 843, 846, and 856, as well as 18 U.S.C. §§ 371 and 1028, and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). He moved to reduce his sentence following the adoption of Amendment 599 to the Sentencing Guidelines, which eliminated defendant's two-level enhancement for firearm possession on his underlying drug offense because the firearm used to enhance his sentence had also been a part of the offense that constituted his § 924(c) conviction. *Booker* was decided after Amendment 599 took effect, but before defendant made his motion for reduction. When he did make his motion, he argued that the district court could impose a sentence below the applicable Sentencing Guidelines. The district court rejected Hick's *Booker* argument, but the Ninth Circuit vacated and remanded.

First, the Ninth Circuit noted that "district courts are necessarily endowed with the discretion to depart from the Guidelines when issuing new sentences under § 3582(c)(2)," 472 F.3d at 1170, due to *Booker's* admonition that the Guidelines may not be mandatory in some instances and advisory in others. *Id.* (citing *Booker*, 543 U.S. at 266, 125 S.Ct. 738). While agreeing with the government that § 3582(c)(2) proceedings were not full re-sentencings, the Ninth Circuit stated the "dichotomy drawn by the government, where full re-sentencings are performed under an advisory system while 'reduction proceedings,' or 'modifications,' rely on a mandatory Guideline system, is false." *Hicks*, 472 F.3d at 1171.

The Ninth Circuit also discussed § 3582(c)(2)'s requirement that the reduction be consistent "with applicable policy statements issued by the Sentencing Commission." It held that applying the Guidelines in an advisory fashion was not inconsistent with the version of U.S.S.G. § 1B1.10, p.s., in effect at the time. *Id.* at 1172. The Court further held that, "under *Booker*, to the extent that the policy statements would have the effect of making the Guidelines mandatory (even in the restricted context of § 3582(c)(2)), they must be void." *Id.*

For the reasons set forth in this opinion, I decline to follow the Ninth Circuit decision.

not require, a district court to modify a defendant's sentence), but does not allow for an increase in the sentence. Accordingly, there is no judge found fact that increases defendant's sentence beyond the statutory maximum.

### III. *Re-sentencing*

Finally, even if this court were to view the relevant Policy Statement as advisory, for the reasons stated in *Simon v. United States,* 361 F.Supp.2d 35 (E.D.N.Y.2005), I would use either a 20:1 or 10:1 powder to crack cocaine ratio, rather than the 1:1 ratio sought by defendant. Using either of these ratios, defendant's base offense level would be 34, as defendant would be accountable for the equivalent of either 7,176.06 kilograms or 3,663.9 kilograms of marijuana. Granting defendant the benefit of a cap at 30, which she mistakenly received at sentencing, and applying the 'safety valve' reduction, defendant's adjusted offense level would be 28, the same as her original adjusted offense level. Reaching the same conclusion regarding § 3553(a) factors as I did at defendant's original sentencing,[8] I would give defendant the same sentence.

### Conclusion

For the reasons set forth above, defendant's motion is denied. The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

---

**8.** As defendant notes, she has two children with Aponte. Due to defendant's and Aponte's incarceration, these children have been without both parents for five years. I was fully aware of this concern at the original sentencing of defendant, as defendant moved for a downward departure on this ground.

While I do not dispute or wish to dismiss the tragedy of the situation, this factor was considered at defendant's original sentencing, Tr. at pp. 11, 15, and defendant's argument points out no change in circumstances beyond the expected passage of time.